IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

STARLA HAMILTON and SAVANNAH-  )
CHATHAM COUNTY FAIR HOUSING    )
COUNCIL, INC,                  )
                               )
        Plaintiffs,            )    CASE NO. CV415-012
                               )
v.                             )
                               )
KAREN LANIER, individually;    )
and NATHANIEL J. LANIER, III   )
and KAREN LANIER, as           )
Conservators and Guardians of  )
Nathanial "Jack" Lanier, Jr.;  )
                               )
        Defendants.            )
                               )

## O R D E R

Before the Court is Defendant Karen Lanier's Motion for Summary Judgment. (Doc. 26.) For the following reasons, Defendant's Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**. This case will proceed to trial on Plaintiffs' claim for discriminatory housing practices against Plaintiff Hamilton based on sex or gender.

### BACKGROUND

Defendant Karen Lanier and her husband Nathaniel "Jack" Lanier, Jr. operated a business renting mobile homes to tenants.[1] The Laniers filed joint tax returns and shared equally in the

---

[1] For purposes of this order, the Court refers to Defendant Karen Lanier as "Defendant Lanier" and Defendant Nathaniel "Jack" Lanier, Jr. as "Mr. Lanier." Defendant Lanier and Mr. Lanier are jointly referenced as the "Laniers."

profits and losses of the business. (Doc. 33 at 16.) Defendant Lanier handled rent payments and made out rental receipts, which she occasionally signed in her husband's name. (Id. at 17.) She also provided informational bulletins and notices to residents, prepared leases, and may have executed at least one lease in her husband's name. (Id. at 17-18.)

In March 2012, Plaintiff Starla Hamilton rented a mobile home at 574 Elm Drive, Ellabell, Georgia from Mr. Lanier (Doc. 34 at 2.) After renting the mobile home, Mr. Lanier allegedly began to make inappropriate comments about Plaintiff Hamilton's body and attempted to kiss her. (Id. at 6.) Mr. Lanier also made numerous comments indicating his interest in pursuing a sexual relationship. (Id. at 6-7.) Plaintiff Hamilton repeatedly rebuffed these requests.

When Plaintiff Hamilton fell behind in her rent, she began cleaning the Laniers' home to cover the shortfall and make additional money. (Doc. 33 at 3.) In addition to paying Plaintiff Hamilton for her cleaning services, Mr. Lanier also purchased a van for Plaintiff Hamilton, who was to repay Mr. Lanier. (Id. at 3.) In January 2014, Plaintiff Hamilton went to the Lanier's home to clean and pay rent. (Id. at 4.) At the time, she was only able to make a partial rent payment. (Id.) According to Plaintiffs, Mr. Lanier then offered to forgive Plaintiff Hamilton's rent if she agreed to have sex with him.

(Id.) Plaintiff Hamilton refused. In retaliation, Mr. Lanier required her to pay all of her rent—both for the month she was behind and the next—just nine days later. (Id.)

Plaintiff also struggled to make payments on the van. On May 13, 2014, Plaintiff Hamilton again went to the Lanier's home to clean. (Id. at 5.) Mr. Lanier confronted Plaintiff Hamilton about late payments on the van and again offered sex in return for forgiveness on the debt. (Id.) Plaintiff Hamilton refused. The next day, Mr. Lanier repossessed the van. (Id.)

After these events, Plaintiff Hamilton contacted Plaintiff Savannah-Chatham Fair Housing Council, Inc. ("SCFHC"), who proceeded to investigate the Laniers' housing operation. (Id.) Plaintiff SCFHC contacted Defendants' tenants and provided them with information about the Fair Housing Act ("FHA"). (Doc. 1 at 8.) Plaintiff Hamilton also registered a complaint against Mr. Lanier with SCFHC. (Doc. 33 at 6.) When Defendant Lanier learned of the complaint, she contacted Plaintiff Hamilton demanding to know whether Mr. Lanier had sexually harassed Plaintiff Hamilton and whether Plaintiff Hamilton had filed a sexual harassment complaint. (Id.) According to Plaintiff Hamilton, after she told Defendant Lanier that she had filed such a complaint, Defendant Lanier berated her. (Doc. 1.)

On July 16, 2014, Defendant Lanier filed a dispossessory action on behalf of her husband against Plaintiff Hamilton.

(Doc. 33 at 6.) Defendant Lanier also prohibited her husband from having contact with tenants and shortly thereafter, Mr. Lanier was deemed incompetent. (Id. at 6-7.) Pursuant to the Fair Housing Act, 42 U.S.C. § 3601-3618, Plaintiffs filed the instant action on January 16, 2015, for discriminatory housing practices against female tenants based on sex or gender. (Doc. 1 at 1, 12.)

**ANALYSIS**

I. <u>SUMMARY JUDGMENT STANDARD</u>

According to Fed. R. Civ. P. 56(a), "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Such a motion must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Id. The "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.' " <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56 advisory committee notes).

Summary judgment is appropriate when the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex Corp. v.</u>

4

Catrett, 477 U.S. 317, 322 (1986). The substantive law governing the action determines whether an element is essential. DeLong Equip. Co. v. Wash. Mills Abrasive Co., 887 F.2d 1499, 1505 (11th Cir. 1989).

As the Supreme Court explained:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.

Celotex, 477 U.S. at 323 (citations omitted). The burden then shifts to the nonmovant to establish, by going beyond the pleadings, that there is a genuine issue as to facts material to the nonmovant's case. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).

The Court must review the evidence and all reasonable factual inferences arising from it in the light most favorable to the nonmovant. Matsushita, 475 U.S. at 587-88. However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Id. at 586. A mere "scintilla" of evidence, or simply conclusory allegations, will not suffice. See, e.g., Tidwell v. Carter Prods., 135 F.3d 1422, 1425 (11th Cir. 1998). Nevertheless, where a reasonable fact finder may "draw more than one inference from the facts,

5

and that inference creates a genuine issue of material fact, then the Court should refuse to grant summary judgment." Barfield v. Brierton, 883 F.2d 923, 933-34 (11th Cir. 1989).

II. DEFENDANT LANIER'S MOTION FOR SUMMARY JUDGMENT

Section 818 of the Fair Housing Act prohibits sexual discrimination in connection with the "sale or rental of a dwelling." 42 U.S.C. § 3604(b). "[W]here the terms and conditions of a rental, including continued occupation, rent, and the provision of repairs, are conditioned upon compliance with the sexual demands of a landlord, then sexual activity has become part of the terms and conditions of the rental, and the landlord is liable for sex discrimination under § 3604(b)." Richards v. Bono, 2005 WL 1065141, *5 (M.D. Fla. May 2, 2005). Plaintiffs may also sue for sex discrimination when sexual harassment creates a hostile environment. Mendoza v. Borden, Inc., 195 F.3d 1238, 1244-45 (11th Cir. 1999) (citing Henson v. City of Dundee, 682 F.2d 897, 903-05 (11th Cir. 1982)); see also Tagliaferri v. Winter Park Hous. Auth., 486 F. App'x 771, 774 (11th Cir. 2012) (declining to decide whether sexual harassment is actionable under the FHA, but citing Mendoza as the standard for sexual harassment claims). Plaintiffs may also establish a claim for sexual harassment by showing quid pro quo sexual harassment. See Honce v. Vigil, 1 F.3d 1085, 1089 (10th Cir. 1993).

6

Defendants do not challenge that Plaintiffs have raised a prima facie case of sexual harassment under the FHA. Accordingly, the Court does not address that issue here. However, Defendant Lanier claims that she had no knowledge of conduct that violated the FHA, or any duty to prevent such conduct. (Doc. 27 at 3.) In response, Plaintiffs allege that Defendant Lanier is individually liable for unlawful retaliation. (Doc. 33 at 9.) In the alternative, Plaintiffs allege that Defendant Lanier is subject to vicarious liability due to the existence of a partnership between her husband and herself. (Id. at 14.)

A. Retaliation

Plaintiffs allege that Defendant Lanier "filed [a] dispossessory action in response to [Plaintiff Hamilton's] Fair Housing Act Complaint." (Doc. 33 at 9.) Plaintiffs claim that Defendant Lanier is individually liable under the FHA because she retaliated against Plaintiff Hamilton for her FHA complaint. While that may be true, none of the allegations, facts, or circumstances supporting Plaintiffs' retaliation claim were raised in the complaint. In fact, the complaint itself—read even in the most forgiving light—does not allege a retaliation claim

based on a dispossessory action.[2] As the Eleventh Circuit has acknowledged,

> [i]n Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512, 122 S. Ct. 992, (2002) the Supreme Court has mandated a liberal pleading standard for civil complaints under Federal Rule of Civil Procedure 8(a). This standard however does not afford plaintiffs with an opportunity to raise new claims at the summary judgment stage. Indeed, the "simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." Id. Efficiency and judicial economy require that the liberal pleading standards under Swierkiewicz and Rule 8(a) are inapplicable after discovery has commenced. At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Fed. R. Civ. P. 15(a). A plaintiff may not amend her complaint through argument in a brief opposing summary judgment. Shanahan v. City of Chicago, 82 F.3d 776, 781 (7th Cir. 1996).

Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1314-15 (11th Cir. 2004). Because the complaint did not raise a claim of retaliation under the FHA, the Court cannot conclude that Defendant Lanier is individually liable for unlawful

---

[2] The closest Plaintiffs have come is an allegation that Defendant Karen Lanier "berated" Plaintiff Hamilton upon learning of the complaint. As an initial matter, that language is contained in a section titled "Knowledge and Ratification by Defendant Karen Lanier," and does not mention retaliation. Even if this could somehow support a claim of retaliation, the Court is hard pressed to determine that "berating" another individual is a sufficiently adverse action. See, e.g. Shotz v. City of Plantation, 344 F.3d 1161, 1182 (11th Cir. 2003) (noting that conduct "must be material to be adverse").

retaliation.[3] Accordingly, Defendant Lanier's motion with respect to any claim based on unlawful retaliation is **GRANTED**.

B. <u>VICARIOUS LIABILITY</u>

Plaintiffs next allege that Defendant Lanier is vicariously liable for sexual harassment. (Doc. 33 at 14.) "[I]t is well established that the [Fair Housing] Act provides for vicarious liability." <u>Meyer v. Holley</u>, 537 U.S. 280, 285 (2003). Because housing discrimination under the FHA is essentially a tort action, the Court "has assumed that, when Congress creates a tort action, it legislates against a legal background of ordinary tort-related vicarious liability rules and consequently intends its legislation to incorporate those rules." <u>Id.</u> at 285 (citing <u>Monterey v. Del Monte Dunes at Monterey, Ltd.</u>, 526 U.S. 687, 709 (1999)). Moreover, "the Department of Housing and Urban Development [], the federal agency primarily charged with the implementation and administration of the statute, 42 U.S.C. § 3608, has specified that ordinary vicarious liability rules apply in this area." <u>Id.</u> at 287.

---

[3] The Court notes that Plaintiffs' counsel should know better than to provide a series of facts and then state "Defendants have injured plaintiffs in violation of the federal Fair Housing Act, 42 U.S.C. § 3601, et seq., by committing discriminatory housing practices against female tenants based on sex or gender." (Doc. 1 at 12-13.) It is not this Court's role to determine which provisions of the Fair Housing Act Plaintiffs believe were violated.

9

Plaintiffs cite to Connors v. Ryan's Coal Co., 923 F.2d 1461 (11th Cir. 1991), for the proposition that "[w]hether Karen Lanier and Jack Lanier were partners with respect to the operation of the mobile home properties for purposes of liability under the FHA is ultimately a question of federal law, although state law may provide guidance." (Doc. 33 at 15.) In that case, a wife was found liable for violations of the Multiemployer Pension Plan Amendments Act of 1980 on the basis that she was a partner in a cattle farming operation. Connors, 923 F.2d at 1462. The wife and her husband owned a joint 60% interest in the farmland. Id. at 1467. The property taxes and mortgage were paid by the cattle farming operation. Id. The Eleventh Circuit, over a vigorous dissent by Judge Thomas Clark, found that the district court did not err in determining that the wife was a partner. Id. at 1468.

Many other courts have struggled with how to determine whether a husband and wife are doing business as a partnership. In 1896, the Supreme Court of Georgia opined that there was no law forbidding a woman from engaging in a partnership with her husband. Burney v. Savannah Grocery Co., 98 Ga. 711 (1896). However, the court noted that "[a]n alleged partnership cannot be used as a mere device for rendering the wife liable for, or subjecting her property to the payment of, debts of her husband." Id. at 711. In 1990, the United States Bankruptcy

10

Court for the Southern District of Georgia evaluated whether a family farm run by a husband and wife constituted a partnership such that the husband and wife could be deemed a "family farmer" in bankruptcy. In re Jackson, 1990 WL 10007490 (Bankr. S.D. Ga. Nov. 1, 1990). The court held that the husband and wife did not qualify as a partnership because

> the debtors did not separate [t]heir farm operation from their nonfarm income, debts, and expenses. While the debtors filed a joint tax return, no separate farm related partnership return was prepared. There is no evidence that the debtors at any time held themselves out as a partnership in the farming operation.

Id. at *2. The court also stated that "the debtors in this case are 'partners' in their life together just as any married couple making a home together but are not a partnership as defined under the Bankruptcy Code for determination of 'family farmer' status for Chapter 12 eligibility." Id. In 2002, the Middle District of Georgia noted that courts "generally hold that intent will not be imputed from one spouse to the other in the absence of a business relationship." Agribank, FCB v. Gordon, 2002 WL 32155708, at *7 (M.D. Ga. Sept. 18, 2002) (citing Allison v. Crescentia, 960 F.2d 481, 485 (5th Cir. 1992) (holding that the agency rule under which the fraud of one partner may be imputed to co-partners was inapplicable to spouses who were not jointly operating a business); First USA, Inc. v. Savage, 176 B.R. 614, 616 (Bankr. M.D. Fla. 1994)

(noting that in each case where courts have imputed liability from one spouse to the other under § 523(a)(2), both spouses had a business or partnership relationship independent of the marriage); S.P. Inv. Ltd. P'ship v. O'Conner, 145 B.R. 883, 892 (Bankr. W.D. Mich. 1992) (refusing to impute spousal intent where husband and wife were not business partners)).

In this case, Plaintiffs allege that Defendant Karen Lanier is vicariously liable for her husband's torts because she was engaged in partnership with her husband. Specifically, Plaintiffs claim that the Laniers filed joint personal tax returns, shared the profits and losses of their business, and treated their mobile rental homes as a joint asset. (Doc. 133 at 16.) Plaintiffs also claim that Defendant Lanier had an equitable interest in the properties at issue because they were acquired during her marriage to Mr. Lanier. (Id.)

It is clear that the husband and wife involved in this case operated a family business. However, there is relatively little evidence that the Laniers operated a formal partnership or that they held themselves out as a partnership.[4] Nevertheless, there

---

[4] The Court does not credit Plaintiffs' statement that Defendant Lanier and Mr. Lanier filed a joint tax return as the Court cannot determine that a partnership exists based on tax returns which do not reflect the existence of a partnership. See Connors, 923 F.2d at 1470 ("The fact that a husband and wife file a joint tax return, or that income from a farm's operations is reported on that joint return and thus appears to accrue to their joint benefit is of no probative value with respect to the

12

is some information proffered by Plaintiffs suggesting that Defendant Lanier exercised certain control over the day-to-day operations of her husband's business. See Agribank, 2002 WL 32155708, at *7 ("[W]hen spouses have a business relationship, courts will usually apply some variety of agency law to impute intent."). The Court is mindful that it may not usurp the place of the jury in determining whether the control Defendant Lanier exercised indicates the existence of a partnership. Accordingly, the Court concludes that there is a sufficient—if scant—question of fact to allow this case to proceed to the jury on the question of vicarious liability. Defendant's motion for summary judgment is **DENIED** as to the charge of vicarious liability.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (Doc. 26) is **GRANTED IN PART** and **DENIED IN PART**. This case will proceed to trial. This case will proceed to trial on Plaintiffs' claim for discriminatory housing practices against Plaintiff Hamilton based on sex or gender.

SO ORDERED this 9th day of September 2016.

WILLIAM T. MOORE, JR.
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

---

existence of a partnership." (citing Zeeman v. United States, 395 F.2d 861, 864 (2d Cir. 1968))).